and Mary Murphy has led Europe in the state of Jamestown to cease at all dependence upon it. Our next guest is Craig J. Squillick. Thank you. How do you pronounce your name, sir? Squillick. You may proceed, Mr. Squillick. My name is Craig Squillick and I represent the defendants and I will be giving the argument on behalf of all the defendants today. Thank you. The issue that's in front of you is rather simple and straightforward. The question you're here to ask or answer for us is whether or not James Hollinger was classified as an insured under Sander Wendlandt's policy on September 11th of 2015. To understand how we got here today, we first need to look at the language of the policy in question. At the time of the crash, which we'll step back, Mr. Hollinger's driving a vehicle that's owned by Ms. Wendlandt. There's an underlying insurance policy from State Farm. Ms. Wendlandt also purchased an umbrella policy through State Farm. Contained within that policy, there is under six paragraphs in the listing of what is defined as insured. There are three separate categories for who is defined as an insured under policy. One of them would be the named insured or someone who is a relative in the household. The second would be any other human being under the age of 21 whose primary residency in your household and who is in the care of a person described in 6A. The defendants agree that with regard to Mr. Hollinger, he was not married to Ms. Wendlandt, he would not fall under A, nor is he under the age of 21 because he's at the time of the crash and he's 55. He would not fall under either A or B. And it's 6C that we're going to focus our argument on today and where the defendants believe that Mr. Hollinger was insured under this policy. That provision reads as follows. Any other person or organization to the extent they are liable for the use of an automobile, recreational motor vehicle, or watercraft by a person included in 6A or 6B. Or put another way, James Hollinger, to the extent he is liable for the use of an automobile by a person included as the insured, Senator Wendlandt. At the time of the crash in September 11, 2015, Mr. Hollinger, as I said, was operating a vehicle owned by Ms. Wendlandt. At the time of the crash, they were driving to see Ms. Wendlandt's daughter in Iowa. They were going to see a football game. There was a backseat passenger, her name was Alyssa Guarino, that was a friend of Ms. Wendlandt's daughter, and they were going to drop her off there. There was no Hollinger children in the vehicle. There was no Hollinger people that they were going to see. The express purpose and benefit was for the use of this vehicle was by Sandra Wendlandt. When you look at the policy language, the operative word that we want to focus on is the word use. Is that defined in the policy? It is not. There is no definition for the word use. In fact, there is no wording in 6C which requires Ms. Wendlandt, the insured, to be in fact operating the vehicle at the time of the crash. Is it required that she be in the vehicle? That is left to interpretation, Your Honor. There is no suggestion one way or the other. But I guess the presumption would be that there has to be some use by the insured. Maybe I need to go back even a little farther in that particular sequence in C. To the extent they are liable for the use, what does that particularly mean as it relates to Mr. Hollinger? We find that to be ambiguous and it is one of our arguments why we believe he should be covered because the terminology is ambiguous. But if you were to take the step and make an argument, I believe the thought would be that if he was operating the vehicle, which he was, his conduct would call into question if he did something negligent that day. I mean, with regard to B and C, I think what is important to note, it clearly carves out some type of exception or allowance for other people other than the name insured to be operating the vehicle. Well, there is no question that everybody agrees that he was a permissive user. He hadn't stolen the vehicle. Correct. Absolutely. And he was caught in that and State Farm was providing him coverage under the original or the primary policy. Absolutely. The question is whether now it extends on to this umbrella policy, which we believe it does. If she had sent him to the store and said, hey, would you go get a gallon of milk in my car, would that be her use of the car? Potentially, I think. And it's a good question, just because I think you'd have to extrapolate or pull out more facts as to if, in fact, he was in fact acting as an agent for Miss Wendland at that time. But certainly that certainly would be enough to survive a summary judgment. I believe so, because there is a benefit that's being derived from Mr. Hollander using that vehicle at that time for Miss Wendland. Use in Illinois law is very broad. When we talk about the use of a motor vehicle, it doesn't mean that he has to be or the insured has to be operating at the time. She, in fact, is using her vehicle by the fact that she's a passenger in a vehicle being driven by somebody else. There's more miles being taken off that car. Gas is being used. That car is being used by her. It fulfills the requirement under 6C that the insured's vehicle is being used. She owned the vehicle, did she not? Yes. Was there any allegations of negligent entrustment? No, Your Honor. In fact, that's an exclusion of the umbrella policy. It's a specific? Yes, as well as any type of failure to supervise by the insured would be an exclusion as well. Well, if all those were excluded, then what other possible forms of liability could the person who was included in A and B be liable for? Well, the only thought would be if they were operating the vehicle. However, C is a little bit different. It doesn't say operate. It doesn't mean it doesn't have an requirement that the insured be operating. Clearly, there's an open air that allows someone else other than the insured to be using the vehicle. Okay, now I want to go back to the question I asked and put the phrases together. Okay. I'll put the names in. Mr. Hollander, to the extent he is liable for the use of the automobile by Wendland, I guess would be the way you'd read it, by a person. So that would be Wendland. Right. What, if anything, did Wendland do wrong? I don't think she did anything wrong, but nor do I believe that this language requires us to suggest that she did something wrong. And that's the ambiguity that arises from this. Some of the cases, and I'll go to that, because some of the cases that have been cited in the brief by State Farm have more explicit language which suggests that the insured has to have some type of liability or has to be an admission of what they've done for that other person to be insured. That's not in this language. There is no suggestion, I believe, in the interpretation of 6C to suggest that Ms. Wendland had to do something wrong for Mr. Hollander to be covered. All it says is that the person operating or the person driving, presumably, is liable for the use of an automobile by a person included in 6A or B. And 6A would clearly be Ms. Wendland. Could this section be interpreted to mean that if Ms. Wendland was driving Mr. Hollander's car, that the umbrella policy would apply? That may be, and that could be an interpretation as well. I mean, there is some vagueness to it. If she was driving the vehicle and she drove into a truck, then I think allegations could be made that she was not vicariously liable, but personally liable. Agreed, Judge. And as such, he, Mr. Hollander, it was his car, he might be liable vicariously because he allowed her to drive the vehicle. Potentially, that could be an argument, yes. So when you say potentially, does that mean that you believe that at least you would have argued that it was covered if those were the facts? I would think, prospectively, Judge, I would want to know more about what the trip was about and what circumstances, because I think everything is a little bit factually based. Let's assume that the same facts relating to going to Iowa to visit her daughter was the same, and Mr. Hollander was allowing the use of his car and was going along for the ride. I think there could be a possibility that there would be some exposure to the liability policy. But what intrigues me or what draws me back is the argument of use of a vehicle, because I suspect what the policy is suggesting is vehicles that would be insured under this specific policy. I don't know if State Farm would take the next step and say that since Ms. Wendland is driving someone else's vehicle, that in fact the umbrella policy would apply. But in this factual scenario, it would, Mr. Hollander would, because Ms. Wendland is using her own vehicle which is insured under the umbrella policy. So when we look a little bit further into some of the questions, there's no definition of operation here. There's no definition of use anywhere in the policy. And as such, I think we just use the plain definition of what use is. And when we look at the Webster's Dictionary about use, it's the act of employing something or the privilege or the benefit of using something. So clearly, Ms. Wendland would be receiving a benefit or some form of privilege of having someone else, in this factual scenario, drive the five-hour truck for her. In essence, Mr. Hollander is acting as an agent of her by driving her vehicle and should be covered under the policy. State Farm has disagreed with that position and has suggested, quite candidly in their brief, that there has to be liability on Ms. Wendland and that this argument should fail because there's been no causes of action against Ms. Wendland. There's nowhere in 6C which suggests that, at least plainly written, that in fact Wendland's conduct needs to have to be at issue for James Hollander to be insured under the policy. And in fact, you can even look up to 6B where they talk about other people using it. There's no language in 6B which would suggest that Ms. Wendland or any other insurer would have to be, like, some type of vicarious liability. I don't think there's anywhere in this section where vicarious liability is clearly pointed out and, as such, under the plain reading of the policy, Mr. Hollander is using this vehicle for Ms. Wendland's benefit and, as such, I think the policy, this provision in this policy should apply and Mr. Hollander should be considered an insurer. And, of course, in all the underlying lawsuits, which is why we're here, the allegations are strictly against Mr. Hollander, the location, failure to reduce speed, failure to stop, failure to do whatever, disobeying, I guess, a stop sign might be an issue. Yes, that is true, Justice. The next contention that we have that we need to look at as a language is, is it ambiguous? And I would say, yes, there is ambiguity to this language. And I guess you have to look no further than what happened down in the trial court where, when this was brought as a declaratory and a summary judgment, the trial court originally denied the summary judgment motion and felt that there was ambiguity to this language of 6C and then a motion to reconsider ultimately granted. What's the legal definition of ambiguity for purposes of review or analysis of these types of cases? Certainly, it's a question of law in front of you, Judge. And the question and the ambiguity is... Doesn't there have to be two different reasonable opinions as to what, at least two reasonable opinions? I apologize. I didn't mean to cut you off, Justice. Outboard Marine Corp. v. Liberty Mutual Insurance, 154 Hill 2nd, 180108-109, which we have in our brief, if the words in the policy are unambiguous, a court must afford them plain, ordinary, and popular meaning. However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insurer and against the insurer who drafts the policy. Okay. Do you want to conclude or finish up? You'll have an opportunity to make rebuttal after the appeal is filed. Judge, for the purposes of not waiving any argument, we do believe, obviously, Judge, from our briefs, that we feel that the language in it is ambiguous. And the cases that have been cited by State Farm with regards to somewhat similar language don't apply because they're not similar language, but also they are factually different, Judge. And I don't believe they apply. And our last argument, which we had in our brief, was the last anecdotal rule. And we believe that's a statutory construction issue or a contract construction issue that we believe potentially could apply in this matter. Thank you. Thank you. Ms. Green? You may proceed. Good morning, Your Honors. May it please the Court? Good morning. My name is Ellen Green, and I'm here today on behalf of the plaintiff, Appleby State Farm. I'd first like to clarify that State Farm did issue two policies to Sandra Wedland, named insured in this case. The first was a personal auto policy. And State Farm is providing a defense to Mr. Hollander's estate in the underlying actions because he was a permissive user of the vehicle. Now, the second policy is the one at issue here is the umbrella policy. It has a different definition of insured than the primary policy, and it does not have a provision for permissive users. James Hollander was not an insured under the umbrella policy. Is that specific or is that implied by the exclusion of negligent entrustment? That's one way, but it is not a category of anyone using the vehicle with your permission, as it would be in a primary policy. That would be – it's a more limited definition of insured. It does not include permissive users. It's much more narrow. It only has these three, 6A, 6B, which the plaintiff concedes do not apply, and they're arguing that it's under the 6C, any person or organization, to the extent they are liable for the use of an automobile by a person included in one of the two above categories, which was the named insured or someone under 21. And they're arguing that because – that Sandra Wedlin was using this vehicle, and that therefore anybody else who is also using the vehicle in a different manner is an insured under the policy. But they're missing that nexus of liable for the use. It's any person to the extent they're liable for the use of a vehicle by, in this case, the named insured Sandra Wedlin. Here Sandra was using the vehicle solely as a passenger. There's no allegations to suggest that the estate is potentially liable for her use of the vehicle as a passenger. There's no claims asserted against her in any of the three underlying lawsuits. There's no allegations that she was doing anything other than sitting there and being a passenger to the lawsuits. Don't even mention her. The third is the one in which she is the plaintiff when she's seeking to hold the estate of James Hollander liable for his use of the vehicle. Excuse me, but what scenario would trigger this particular personal liability in this policy? It goes upstream. It's when, you know, if she were using her vehicle, let's say she's delivering gifts for a charity, and the charity gets sued because she's doing this on their behalf. It's when, it's sort of, it's upstream. What if she's using her vehicle to deliver pizza and get paid by Papa John's or Duos, two ways, whatever. Yeah, there's, I'm sure there's another exclusion. It's when she's the agent, not when she's the principal. And it's not a provision for Sandra Wedland and her agents and employees. It's when Sandra Wedland is, somebody else is liable because of what Sandra did. Essentially, is it your position that vicarious liability doesn't apply in this situation? No, because there's no allegations in any of the underlying complaints that, of vicarious liability. The only allegation that relates to Sandra Wedland is that she's a senior. Well, the point is that 6C doesn't include in its coverage vicarious liability of women. It's only, no, right, it's only for others who are vicariously liability for her, of the vehicle. Her use is just sitting there. She's using it as a passenger. There's no allegations or any theory of liability against her for which somebody else could be liable. She's just sitting there as a passenger. In fact, she's also a plaintiff in one of the underlying actions. What if she's the passenger and she, for whatever reason, grabs the wheel and there's an accident? That's a totally different situation. But she's a passenger, but she did something, I guess, would be the issue. Yeah, that may be her use. She's a passenger and there's some theory of liability. But that isn't the situation. The only allegation is that she was just sitting there. In fact, she's a plaintiff for the conduct of Mr. Hollander. Where does it, if it does at all, indicate that other than in the coverage one, personal liability? It says if a claim is made or suit is brought against insured, and we know who that is, for damages because of a loss for which the insured is legally liable. Even that phrase does not include the word operation. No, she doesn't have to be an insured here. It could be, let's say she was running errands for her church. It's possible the church could be legally liable because she's acting as their agent. It's not for agents of the insured. It goes upstream, not downstream. In that case, the insured, let's say the church would qualify as an insured, and it could be legally liable because Sandra Wedlin was running an errand on their behalf. In this case, the name insured, Sandra Wedlin, is just a passive actor here. She's just sitting using her vehicle, and there's a disconnect there. You know, it has to be liable to the extent this person, and they're claiming it's James Hollander, is liable for the use of a vehicle by Sandra Wedlin. And they're trying to break that up, saying, well, he was using the vehicle and has liability. She was also using the vehicle. But no, it has to be that a nexus of her having some liability. I'm sorry, he has to be liable for her use of the vehicle, and she has no liability. She's a passenger. In fact, she's a plaintiff in one of the underlying actions. What if she didn't want to drive and he was doing her a favor, but she knows that he doesn't have a driver's license, but she still lets him drive? But she's still sitting there. She's doing nothing. But she, as I guess Justice McClaren would say, a negligent entrustment, she says, you go ahead and drive, I'm tired, even though she knows he doesn't have a license. Would that put her in a situation? To make him an insured? Yes. It doesn't make him liable for her use of the vehicle. Because it's a vicarious liability situation where he's, I'm getting myself confused, it goes upstream. So when she's driving, doing something on behalf of a principal, not when there's an agent acting on her behalf. If she says, I have a headache, I'm feeling terrible, can you drive for me, does that change it? Well, he's using, it's for her use, but it's not, there's no legal liability for letting, for having somebody else use your car. If I, you know, if you send somebody out on an errand, they're not, it has to be, I'm sorry, a principal-agent relationship. And in furtherance, I'm sorry, getting myself confused. I'm just going to refer to the language of the definition here. To the extent they are liable for the use of the auto by a person. So in that case, the use of the auto would be of, she's not really using the vehicle, she's just asking somebody to go. She's using it to transport herself. But he's not, she's not liable. I'm sorry. There are no allegations in any complaint anywhere in the world that indicates that she's liable for being a passenger. No, there's not. For her use of the vehicle, whatever that might be characterized as, because there are no allegations relating to how she used it in some way, shape, or form that would result in her liability, which would then result in his liability through her vicarious liability. Yes, Your Honor. Now, could we go on to your response to Mr. Squillick's statement that the terminology is ambiguous? It's not ambiguous. What they're trying to do is break out, they're not keeping the words together. It has to be liability for the use by this other person. They may be liable for their own use. There may be a person also using the car as a passenger, but Mr. Holland, there's no liability on his part for her use. He's not being, they're not seeking to hold him liable because she's sitting there in the car, because that is the only use that's alleged. Well, Your Honor, it was faxed to me, and what I was referring to was what opposing counsel was referring to as ambiguous terminology. So the point, the nexus of my inquiry relates to how is 6C ambiguous or not ambiguous and don't reference the facts, reference the language. There is nothing ambiguous about it. It's any person to the extent they're liable for the use of an auto by one of these other people. He has to be liable for, in this case Mr. Holland, for Sandra Wedland's use as a passenger. There's no theory of liability that would hold somebody else liable for somebody's use of a car, just sitting there as a passenger. And as you said, there's no allegations that she was doing anything like distracting or grabbing the wheel or any conduct on the part of Sandra Wedland. But in the reply brief, the plaintiffs admit that, well, they say the fact that the underlying lawsuits do not allege or even suggest that Hollander could be potentially liable is irrelevant. Well, that's, you know, the very essence of what this provision is about. There's got to be some potential liability on Hollander for her use of the vehicle as a passenger, and there is none. And what about the dead aunt? Excuse me? The aunt decedent. Are you referring to their argument about... I'm referring to the third argument. Yeah, that one is just, that's not even a reasonable interpretation, because what they're saying, they want to take out, they want to say that these words used by a person in the A or B, like a named insured or somebody in the household, that it only modifies the word watercraft, so that what's left is anybody in the world who's using a vehicle, a motor vehicle, or a recreational vehicle would be an insured under the policy. That would include anybody in this room using any vehicle, anybody in the world. As long as they're not using a watercraft, they would be covered. That's clearly absurd, and that's not a reasonable interpretation. That would create an ambiguity. Going back to the ambiguity or ambiguousness, I believe Mr. Skwillick said that evidence of the ambiguity is exhibited in part by the trial judge's first refusal to grant the summary judgment and then in reconsideration did so. What is your response to that statement? I think the court corrected itself. It doesn't mean that there was an ambiguity. The court realized there was not an ambiguity. In that case, a court would never be able to correct itself. It doesn't mean that there was a reasonable interpretation. He realized his error, and he corrected it. No, thank you. Okay, thank you very much. Thank you. You can close if you'd like. Ms. Green? I forgot to say that you could close if you would like. Well, Your Honor, for the reasons that are stated in our brief, we would ask that the court affirm the judgment of the trial court in its entirety. Thank you. Thank you. Mr. Skwillick? Thank you. You may proceed. I must say you stole one of my best rebuttal arguments, Justice, when I was going to ask. We've gone through motions for summary judgment, response briefs, motions to reconsider. State Farmers filed the brief, and at not one point have I ever heard an explanation as to how 6C would ever apply in any situation. Today you asked that question. They said a scenario may exist in which, for example, she's working for an organization and delivering something. Well, think that up. If that would be true, they would be acting as an agent of the Girl Scouts, Pizza Hut, Jimmy John's, and as an agency argument, as a plaintiff's attorney, I would sue Sandra Wendland, Jimmy John's, Girl Scouts, and most likely those corporate policies would have a policy far greater than Ms. Wendland's policy. So in reality, although that may be a reason why that policy may kick in, State Farmers' policy would probably never get touched in that scenario because the corporate policy would be primary, especially if they're acting as an agent. We've given scenarios in our briefs and today as to how we believe 6C applies, and it applies perfectly here. They're trying to suggest to you that in some form we must show liability on Ms. Wendland, Ms. Wendland must have done something wrong. Nowhere in 6C does it say that. The case is cited by State Farm in their brief in which they suggest that there is some type of vicarious liability that must exist on the insured and all the other statutory construction as to that language. Every single one is different on language or more importantly, more explicit as to acts or admissions by the insured. You asked State Farm's attorney a couple of times as to the idea of an entrustment issue or some type of guidance or supervision. Those exclusions exist in the policy to begin with. So that scenario could never play out where 6C would apply, for example, if Ms. Wendland decided that although I know Mr. Hollander has a suspended license and can't drive, I'm going to entrust my vehicle with him because I'm tired. Under the exclusions which are contained in the record under C-42 and C-43 and 24, that wouldn't apply as well as to any issue about her supervision of the vehicle. So thus, under those scenarios, 6C couldn't apply. Under anything. And if that's true, where you are saying that we've got exclusions that exist that would bounce out any idea of a supervision or potentially of an agency argument or a business issue or some type of negligent entrustment issue, there's direct conflict that exists within the policy of how this is worded and what the use is. Well, then what, I guess, is the purpose of the term in C, organization, any other person or organization? And I don't know that, Judge. Because that would fit under the example that Ms. Green gave. Correct, but then if you follow that logic to take that one step further, if Ms. Wendman, in this scenario, is going out to deliver for the Girl Scouts, thinking about it, she'd be an agent of the Girl Scouts. And the Girl Scout policy would be the primary policy because that's the principal agency relationship. The State Farm policy potentially would never come into play or never cover her for her conduct unless there was a suggestion that she wasn't acting as an agent of the Girl Scouts. And she was doing something on her own, just acting as an individual, then she would be covered, of course, under 6A. I'm sorry, I'm missing something because it seems to me, and I like the analogy to delivering pizzas because then she's, quote-unquote, compensated either independent contractor or an agent. But in the process of negligently driving on behalf of a third party, isn't an agent who is guilty of their own negligence also personally liable? And the only reason why many plaintiffs don't seek a judgment or if they seek a judgment, it's only for the utilitarian value of seeing to it that an empty chair doesn't exist or possibly does exist. I don't quite understand your argument that she's not personally liable for her own negligence, and under the interpretation the trial court gave it, there's a million dollars here based upon her personal liability. Because for one thing, 6A or 6B would apply, wouldn't it? To answer your question, Justice, in situations where they are acting within the scope of their employment, the business policy would cover them because they're acting as an agent. As long as they're not going on a furlough, as long as they're acting within the scope of their employment, delivering the pizzas as they're supposed to, or wherever the case may be, the corporate policy would cover them because they're acting within the scope of their employment as part of the business. So that, in essence, would be the first layer or the first primary policy that exists. Her personal policy may come into play, depending on the nature and extent of the injury. It may never come into play. In this case, everybody sued Hollander, I believe. Is that correct? That's absolutely true, Your Honor. There may be a scenario where some people sue Hollander or sue Wendland and other people don't sue Hollander or Wendland. That scenario exists, Your Honor. And in this case, Wendland sued Hollander's estate. Is that not correct? That's true, Your Honor. So what would happen if this insurance policy covered Hollander? Would she then be allowed to collect under her umbrella policy based upon the negligence that she claims Hollander committed? My understanding would be yes, and I have yet to see State Farm raise an issue that she'd be excluded from doing so. If she's not liable, then he's not covered, and therefore she doesn't get any money. On the umbrella policy? Yes. That's what I'm referring to. Yes. Thank you. I believe your time is up. It should be up. Okay. Thank you, Justice. You're welcome. We'll take the case under advisement. This is the last case on the call.